KEER, MAURER COMPANY *v.* UNITED STATES

No. 7764.—

Entry No. 8018.

(Decided December 13, 1949)

*Eugene R. Pickrell (Michael Stramiello, Jr.,* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

COLE, Judge: The dutiable value of thallium sulphate, exported from Germany in March 1939, and entered at the port of New York the following month on the basis of export value, section 402 (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (d)), at 18 reichsmarks per kilo, less freight, insurance, and consular fee, is involved herein. Appraisement was made at a foreign value, section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)), of 25 reichsmarks per kilo, net weight, packed.

The long delay, between the appraisement in April 1939 and the trial of the case in March 1949, was explained by counsel for plaintiff as follows:

The case has been on the docket for a considerable length of time and I should like to explain for the benefit of the Court that this importation was made prior to the war and that as a result of the war it was difficult to obtain the necessary proof to present before this Court in this litigation.

After the war had ended considerable correspondence was carried on between the attorney for the plaintiff and the correspondent in Germany in an effort to obtain the necessary information and while the attorney for the plaintiff was in Germany last year he was finally successful in locating some people who could give us some information which finally led to the proof which we will offer today.

Plaintiff offered testimony of two witnesses and an affidavit, plaintiff's collective exhibit 1, while defendant introduced two treasury agents' reports, defendant's exhibits 2 and 3.

Plaintiff's oral testimony has little, if any, bearing on the real issues. The president of Chemical Marketing Co., Inc., importer of the shipment in question, merely stated that the said corporation purchased the present merchandise. A Government investigator identified as his own work, translations from German into English of parts of sales documents attached to plaintiff's affidavit.

Substantially all of plaintiff's proof is embodied in the affidavit, plaintiff's collective exhibit 1, executed by a clerk employed by the foreign shipper at the time of exportation of the merchandise in question, and who made delivery of the present shipment to the importer corporation. The clerks who made the sale of the product under consideration "are dead or have retired."

Affiant's testimony covers the period from July 1, 1938, to July 1, 1939, when he "was familiar with the production and sales of thallium sulphate sold for home consumption in Germany and for Export to the United States." Throughout the said period, thallium sulphate, such as or similar to that under consideration, was freely offered for sale and sold to all purchasers in the principal market of Beuel am Rhein, Germany, both for home consumption and for export to the United States.

The record, however, is not satisfactory concerning the matter of "usual wholesale quantities," an essential element for proper determination of statutory foreign or export value. No uniformity is shown to have existed either in the price at which the merchandise was sold in the alleged usual wholesale quantities, or in the quantities for which plaintiff's claimed dutiable value of 18 reichsmarks per kilo was charged.

Stating the condition more specifically, it appears from the lists of sales in the said affidavit, that thallium sulphate, the same as the product in question, was sold for home consumption in the usual wholesale quantity of "50 to 100 kilos," as testified to by the witness, at 18 reichsmarks and at 18.75 reichsmarks per kilo. The same document discloses a sale of the merchandise for home consumption at 18 reichsmarks per kilo in a quantity larger than the usual wholesale quantity.

The list of sales for export, set forth in the same affidavit, shows three in the claimed usual wholesale quantity, "150 to 300 pounds" (60 to 120 kilos), one of which was made at 18 reichsmarks per kilo and two at 18.90 reichsmarks per kilo. Three sales, at 18 reichsmarks per kilo, were made in quantities greater than usual wholesale quantities. The remaining three were in lesser quantities and carried a price of 18.90 reichsmarks per kilo.

Defendant's proof offers no clarification of the situation. The treasury representative's report, defendant's exhibit 3, lists 26 sales, of which 19 cover merchandise sold for consumption in the German market, 1 relates to merchandise sold for export to the United States, and the remaining 6 concern sales for export to Paris, France. Of the 19 sales reporting merchandise sold for home consumption in Germany, 10 are shown at 18 reichsmarks per kilo, the value claimed by plaintiff, 4 of which were in the alleged usual wholesale quantities and 6 in lesser quantities. The one sale for export to the United States was to the importer of the present merchandise, at a price of 19 reichsmarks per kilo, higher than plaintiff's claimed value. The six transactions covering merchandise sold for export to Paris, France, show various prices for quantities less than usual wholesale quantities.

Price book data enumerated in the treasury representative's report, defendant's exhibit 2, show definite prices for specific quantities, the

schedule ranging from 18 reichsmarks per kilo for 100 kilograms to 25 reichsmarks per kilo for 1 kilogram, which prices are reported as having been "in effect for a number of years without any change." Whether such price information relates to sales for home consumption or for export to the United States, or includes both classes of transactions, is not disclosed.

The foregoing detailed review of sales records, included in the proof before me, is a positive contradiction of the statement in the brief of counsel for plaintiff that the price at which thallium sulphate was sold for home consumption in Germany "was uniformly 18 Reichsmarks per kilo." Equally untenable, in the light of the analysis of reported sales, is plaintiff's statement that "it is evident that the export value for thallium sulphate the same as the merchandise at bar, is 18 Reichsmarks per kilo."

It is clear to me that plaintiff, having challenged the value found by the appraiser, thereby assuming the burden to meet every material issue involved in the case, has failed to do so.

I therefore hold the appraised value, presumptively correct under the provisions of section 501 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1501), to be the dutiable foreign value of the thallium sulphate in question. Judgment will be rendered accordingly.